CAMERON v. HAVEMEYER et al.

HAVEMEYER et al. v. BROOKLYN SUGAR REFINERY et al.

(*Supreme Court, Special Term, Kings County.* November, 1890.)

1. CORPORATIONS—REORGANIZATION OF TRUST—PRELIMINARY INJUNCTION.
 An association of several corporations, known as the "Sugar Trust," having been adjudged illegal, (24 N. E. Rep. 834,) the holders of the trust certificates, which were issued to the stockholders of the several corporations in lieu of their stock, sued the trustees for an accounting for the property in their hands. The complaint and affidavit alleged that defendants, in pursuance of a scheme of reorganization for their own benefit, concealed from the certificate holders the facts affecting the value of the certificates, and otherwise abused their trust. *Held,* that defendants

would be enjoined from carrying out their plan of reorganization until they had disclosed to the certificate holders all the facts affecting the value of the certificates.

**2. SAME—TITLE OF TRUSTEES—IMPLIED TRUST.**
    The trust agreement under which defendants received the property and stock of the several corporations having been adjudged unlawful and void, defendants held the property so received by them under an implied trust for the benefit of the certificate holders.

**3. SAME—TRUST CERTIFICATE—RIGHTS OF PURCHASERS.**
    The "trust" agreement having been adjudged void, a provision thereof that the certificates are transferable only on the books of the board of trustees does not make it necessary that a certificate should be so transferred before the purchaser can acquire title thereto. The purchaser in such case derives title from the original stockholder, and not from the trustees.

**4. SAME—APPOINTMENT OF RECEIVER—REORGANIZATION.**
    Each certificate holder has the right to demand a settlement of the affairs of the trust and the appointment of a receiver, though the trustees are endeavoring to effect a reorganization on a legal basis. The "trust" is not a corporation, and hence the statutes relating to the reorganization of corporations do not apply.

Action by Henry O. Havemeyer and others, constituting the board of trustees of the Sugar Refineries Company, (Sugar Trust,) against the Brooklyn Sugar Refinery and the other companies forming the "Sugar Trust," which had theretofore been adjudged illegal, (*People* v. *Sugar Refining Co.*, 3 N. Y. Supp. 401, affirmed by the general term of the supreme court in 7 N. Y. Supp. 406, and by the court of appeals in 24 N. E. Rep. 834,) and certain holders of "trust" certificates. The object of this action, as stated in the complaint, was to obtain a decree declaring that plaintiffs were no longer required to continue in the discharge of the duties as members of such board; that the "trust" property in their hands be sold; that the persons interested in the same be ascertained and be required to assert their claims in this action; that they be enjoined from bringing any other action to assert such rights; and that plaintiffs, on accounting for the property in their hands, be discharged from all further liability in the premises. Duncan Cameron and John H. Gleason were made defendants in this action on their own application as holders of "trust" certificates. Defendants Cameron and Gleason move for the appointment of a receiver.

While the action brought by Havemeyer was pending, Duncan Cameron, as a certificate holder, sued said Havemeyer and his associates to obtain a speedy settlement of the affairs of the "trust." Plaintiff alleged that though defendants trustees, in the action brought by them, averred that they were willing to account to the certificate holders, yet, as a matter of fact, they were keeping the property of the "trust" together at great expense to the certificate holders in order that it might be sold in bulk so as to prevent competitive bidding, it being their object, together with others, to reorganize the "trust" for their own benefit, and to transfer the property in their hands to the reorganized body; that said trustees, in furtherance of their scheme, had made the firms of Nash, Spaulding & Company and Wormser & Company defendants in the action brought by them; that said firms were secretly cooperating with said trustees, and, while apparantly representing the interests of the certificate holders, they were really endeavoring to delay judgment in said action, and to induce the certificate holders to surrender their certificates; and that said trustees are secretly buying up certificates in abuse of their trust. Plaintiff Cameron moves for an injunction. The affidavit filed in support of this motion alleged that "the defendants have not commenced this action for the *bona fide* purpose of utilizing it to secure a prompt winding-up of the affairs of said trust, and an actual and prompt distribution of the money and other property in their hands among the body of certificate holders interested therein, but because they saw that such a winding-up would be necessary before they could finally extricate themselves from the dilemma in which they were placed by the opinions of the courts of this state affecting the character

of their combination, popularly known as the 'Sugar Trust,' and for the purpose of controlling legal proceedings to that end, and inducing others to delay the institution and prompt prosecution of legal remedies for such winding-up and distribution; so that defendants and those admitted to their confidence, and co-operating with them, may, meantime, by one means or another, obtain control of the certificates, and then, when they get ready, enter or procure the entry of a judgment which shall authorize a sale or such disposition of the property in their hands, substantially in bulk, so that it may be kept together, and be made the basis or capital of a reorganization, or new organization, for the purpose of accomplishing the fundamental purpose of the sugar trust, namely, by a combination of sugar producers and refiners, to control the production and sale of sugar in this country and elsewhere, so far as practicable, to the end that they may obtain prices therefor for themselves far in excess of the prices which would prevail if the trade in sugar were left to natural and legitimate competition among producers, refiners, and dealers; and that they in the mean time intend to make large incidental profits as individuals, by speculating in the certificates in the market, and in sugar, and to that end to keep certificate holders in doubt and anxiety as to what is really for their interests, thus inducing such holders either blindly to place their certificates under defendants' control, with unlimited power to do as they please with them, or else to induce them to sell the same so that they may be purchased in the interest of such scheme or reorganization for defendants' benefit, and the benefit of those in co-operation with them, at prices less than their real value; and that they intend, when they get ready, to have such judgment entered in their said action as will authorize a judicial sale or disposition of the assets in their hands, substantially in bulk, after they have so consolidated and solidified the purchasing elements of the sugar trade that there will be little, if any, competition at such sale, and that they may obtain the assets in their hands, substantially in bulk, free from the trust obligations which now fetter them, substantially at their own prices, and thus leave such certificate holders as shall hold on to their own certificates to receive a dividend upon the product of such judicial sale or disposition of said assets, which product, in view of the conditions under which the sale will necessarily be made, if defendants are permitted to carry out their scheme, will be much less than the real value of the trust property; that such a sale, after such combination shall have been effected, will be an abuse and perversion of the powers of this court, because all fair and legitimate competition will have been avoided and rendered impossible, and besides that the plaintiffs will be left to conduct a judicial sale, when they are to be either the purchasers or personally interested in the purchase."

The court granted a preliminary injunction ordering that "until the hearing and determination of the said application for a receiver and injunction, above noticed, or any like motion by plaintiff for a receiver in defendants' said action, noticed for same time and place, defendants, and each of them, and each of their agents, servants, and appointees, including the Central Trust Company, and Messrs. Kidder, Peabody & Co., do absolutely desist from soliciting the delivery or receipt of any certificate from any shareholder of said so-called Refineries Company, or accepting any such certificate in consequence of solicitations previously made, or doing any act or thing in that regard which has any relation to any plan or purpose of reorganizing said so-called company, or the business now or lately conducted by it or defendants for it, except that they may preserve certificates sent them; and that defendants do absolutely desist from employing or using said property, or any of said property, in their hands, in any trade, business, or speculation, and from removing the same or any part thereof from this state, or suffering or permitting such removal, and from selling or disposing of the same or any part thereof, and from voting upon any share of the stock held by them or either

of them in the corporations, or either of the corporations, composing the so-called Sugar Refineries Company."

*John L. Hill,* for the motion. *Elihu Root, John E. Parsons, Edward M. Shepard,* and *Mr. Johnson,* opposed.

PRATT, J. In the case first above named, a motion is made for the continuance of an injunction, and for the appointment of a receiver; and, in the second case, there is a motion for a receiver by defendants therein. Immediately after the arguments upon these motions, the defendants submitted a proposed plan of reorganization, and a sworn statement of the assets and liabilities of the "Sugar Trust," so called. By so doing, that part of the preliminary injunction to which there were most strenuous objections became inoperative, to-wit, the part that restrained any plan or scheme of reorganization, as the whole purpose and effect of that part of the injunction was to restrain the defendants in such scheme until they gave certain information called for, (which has since been done,) so that each of the certificate holders could stand upon an equality, so far as knowing what the scheme was to be, and what was the financial condition of the Sugar Trust. Until such exhibit was made, the injunction was eminently proper, and in accordance with the practice in equity. Neither can I see how an injunction could affect the value of the property in the trust which did not interfere with the manufacture or sale of sugar, nor take one dime from the property belonging to the trust, or depreciate its intrinsic value.

It may be well to consider the relation of the defendants in the first suit to the subject of the suit. The best statement of their position is furnished by the defendants themselves under oath. In the bill of complaint filed by them in the suit of Havemeyer and others against the Brooklyn Sugar Refining Company, and others above named, they state that they have a large amount of property in their hands which they received pursuant to the original trust agreement, which is conceded by them to be unlawful and void, and that they therefore ought not longer to exercise the duties of trustees under it. Certainly, if it be void, they ought not to attempt to perform the duties which its language imposes on them, because such acts would constitute further offenses against law, which would subject the corporations composing the trust to forfeiture of their charters. Besides, they profess to desire to be relieved from responsibility, and from their positions. Now, a most serious question arises, whether or not they have any title, or are anything more than mere custodians of property which belongs to others, to-wit, the certificate holders. At the present time, I think, they are mere custodians. If any argument is required to establish this proposition, it will be found in the history of the organization of the Sugar Trust. It is true that the original agreement cannot be enforced as a contract, but it establishes the fact that each stockholder in each corporation in the trust empowered these 11 persons (trustees) to act in receiving his stock, and in issuing a so-called trust certificate in place thereof, which certificate the stockholder accepted as evidence of his right to an undivided interest in the pool of stock; and it also settled another fact: that these trustees had further power to dispose of the 15 per cent. of the stock of the pool for the benefit of those who should become certificate holders.[1] These powers have been executed. The original stockholders have accepted their trust certificates, and some have been sold in the open market by their original holders to persons who have purchased and paid for them. The same is true of the

---

[1] The "trust" agreement provided as follows, with reference to this 15 per cent. of the stock: "Of the shares allotted to the several refineries they shall leave 15 per cent. with the board, and these shares, and any shares not allotted of the $50,000,000, except as herein otherwise provided, shall be subject to be disposed of by the board, either for the acquisition of other refineries to become parties to this deed, payment for additional capacity, or by appropriation to the several refineries."

15 per cent. of certificates. It is therefore obvious that, so far as these sales were made by the original holders, they are estopped from questioning the title of the persons who have bought these emblems of title. The holders of certificates therefore derive title from the stockholders, not from these trustees, but from the original owners of the stock, through and by means of the executed authority given to these trustees by such original stock owners. It is not necessary, however, to determine where the legal title is, as there can be no doubt that they hold the property in a trust capacity, not under the original deed of trust agreement, but under a trust which arises by operation of law. Indeed, upon the argument, it was conceded that the property justly belonged to the trust certificate holders; and, in the bill of complaint just referred to, the plaintiffs, to-wit, these trustees, stated that said board of trustees held the property which came into their hands by virtue of said trust agreement, for which they were willing to account in this action to the certificate holders, in the proportion which the amount of the certificates held by them respectively bears to the amount of the whole number of certificates issued. We therefore find the defendants in possession of property belonging equitably to others, which came into their hands under an agreement, void as to the main purpose for which it was made, and which they cannot legally use for the purposes for which it was placed in their hands; and they are utterly powerless to convey and give a good title or to distribute it to its rightful owners. Whether the agreement is valid, in some respects wherein it has been executed, or whether, under the circumstances, the certificate holders compose a partnership, it is not material now to determine, as these motions relate strictly to the custody and disposition of the property.

The defendants object to the plaintiff Cameron being heard upon these motions, for the reason, as they assert, that he did not own his trust certificate when he began his suit. This is predicated on the fact that 200 shares of his alleged 1,200 shares of stock were not transferred on the books of the Sugar Trust until the 15th inst., and the suit was commenced on the 14th inst., thus assuming that he could get no title without a transfer on the books of the trust; but the only ground for such alleged necessity is the terms of the original Sugar Trust agreement, and, since it is conceded that the instrument is and always has been void, it is difficult to see how it imposes any such restriction. But this objection, if it is valid, does not apply to the stock of Gleason, who also asks for a receiver. It was enough, however, if Cameron was, at the time of commencing his suit, the true owner, although he had not had his stock transferred on the books of the trust. It must be admitted that the rights of the certificate holders are equal, and that the holder of a few certificates is equally entitled to protection with one who owns a large quantity. The Sugar Trust is not a corporation, and hence the statutes applicable to the reorganization of corporations have no application. It is not, therefore, a case where a majority can coerce the minority into any new scheme of reorganization. The purposes of the agreement or copartnership, or whatever it may be called, having failed, each certificate holder has a right to demand that the affairs shall be wound up, and that he have his share of the joint property; and I know of no way that such an event can be accomplished, except by the unanimous consent of the certificate holders, or by application to the courts. In the mean time, what is to be done with the property is a vital question. Shall the business that has been declared illegal be continued, and thus place in jeopardy the charters of all the corporations connected with the trust? Or shall it be taken into custody by the court, and held intact for those interested in it? Shall this vast amount of property be left in the hands of a board, acting without any defined duties or restrictions, without any legal authority, and subject only to the will or discretion of a majority of its members? It is conceded on all sides that, at some time, it will be necessary to apply to the court to appoint some person to dispose of the property of the trust, and divide

the proceeds. Upon one hand we have certificate holders asking for immediate settlement of the trust; and, on the other, the claim that it is not a proper time to interfere with the trustees, as there is a plan of reorganization in process of execution. This latter claim may be answered by saying that a receiver in no way will interfere with a proper plan for reorganization. In fact, no plan can be carried out without a receiver or some one appointed in place of such an officer to dispose of the property, as it will be utterly impracticable to procure the assent of 1,600 certificate holders to come in at once and assent to any scheme of reorganization. The certificate holders, each for himself, has a right to demand that his interest in the property shall be protected in the usual legal way by the courts, and that he shall be left to decide what disposition he will make of his certificates; i. e., to determine for himself whether he will combine with others and form some plan of legal reorganization, or take his share of the trust property. Indeed, in case any legal and satisfactory reorganization scheme is proposed, I see no reason why those certificate holders composing it may not have their share or the bulk of it speedily turned over to them, always leaving enough of the trust property in the hands of the receiver to meet the demands of creditors and certificate holders who do not care to come into the new scheme. The law of the case in respect to the appointment of a receiver is too plain to require a long statement. Where a bill is filed by one of several partners, it is a matter of course to appoint a receiver upon application of either party. *Marten* v. *Van Schaick*, 4 Paige, 479; *Innes* v. *Lansing*, 7 Paige, 583; *Jackson* v. *De Forest*, 14 How. Pr. 81. In *Marten* v. *Van Schaick*, the court said: "Each partner has an equal right to the possession and control of the partnership effects and business, and, if they cannot agree among themselves, it is a matter of course to appoint a receiver." In *Insurance Co.* v. *Huber*, 13 Phila. 52, it was held that a receiver would be appointed of property in the hands of a person who was a *de facto* trustee for several owners, upon the application of some of them, and against the opposition of others, and although no fraud or misconduct of the custodian was alleged. "It is not necessary to entitle a party to the appointment of a receiver that the property in question should be in danger. It is enough that a good equitable title should be made to appear, and that the remedy at law would not fulfill the requisition of justice." Kerr, Rec. (3d Ed.) p. 10. The right of a party to a receiver is a property right, and the discretion of the court must be exercised in accordance with the well-settled rules of law. No sufficient answer has been submitted to these legal propositions; but the defendants insist that the court shall exercise its discretion in permitting them to retain possession of the property, and continue business in the same manner as before, and urge as a reason that the price of the certificates in the market may depreciate. I cannot anticipate any such result. But, if it were true that such would be the effect, it is a good answer to say that judicial decisions cannot be strained to favor speculation in Wall street, where rumors and fabrications usurp the place of facts. Indeed, it is difficult to conjecture any more violent fluctuations in the stock than occurred prior to any legal proceedings having been taken. If the receiver is appointed, the rights of the parties can be ascertained, and the certificate holders will know what it is their interest to do. If a proper plan of reorganization is prepared, self-interest on the part of the certificate holders will make them anxious to adopt it, so that, if the reorganization is good, the appointment of a receiver will help to carry it out without loss of time; and, in any event, the certificate holders will be enabled to act with full knowledge upon the matter. To my mind there never was a clearer case for the appointment of a receiver. It is always a most embarrassing and unpleasant duty to perform, for the reason that conflicting interests make an unseemly struggle for recognition in the appointment of a receiver. In this case it is peculiarly so, owing to the fact that to the public it might appear that I had exceeded my discretion in taking the prop-

erty from the custody of men of the highest standing in the community for business capacity and integrity of character; but it must be remembered that the court at general term has held that the agreement under which they acquired the property is void, as creating a vast monoply, and so against public policy, and that the trust cannot legally further carry on the business. It must also be noted that such a course does not interfere with the manufacture of sugar, but prevents the corporations belonging to the trust from violating the law, and incurring a forfeiture of their charter. I cannot, therefore, but think such a course is not only demanded by law, but it is to the best interest of all concerned; for the public, because it will free the corporations composing the trust from their illegal relations with it, and permit them to become rehabilitated with their former powers and capacity, and thus avoid forfeiture of their charters, and the train of calamities that would follow the interruption of the business of refining sugar; for the certificate holders, because it will preserve the property and facilitate the speedy settlement of the matter, either by a reorganization, if practicable, or a division of the property. The attorney general, it seems to me, has wisely exercised forbearance towards the corporations composing the trust, in order that they might be extricated from their illegal relations without interruption to their business. The appointment of a receiver will accomplish this result, and give assurance that every certificate holder, without discrimination, will be justly dealt with, and a speedy reorganization or distribution of the property will be had. The property is of such a large amount, the business so vast and complicated, that it seems to me wise to appoint at least two temporary receivers, or, if the plaintiffs in the second suit will move that a decree be entered in that suit, appointing permanent receivers, a decree can be entered to that effect. Both parties may submit nominations for receivers, with proposed orders or decree, on or before Thursday, the 6th inst., to be left with the clerk. The amount of bonds will be fixed at the time of naming the receivers.